# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| FLEXIWORLD TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> ROKU, INC., <br><br> Defendant. | Civil Action No. 6:20-cv-00819-ADA <br><br> JURY TRIAL DEMANDED |

**PLAINTIFF'S OPPOSED MOTION FOR RECONSIDERATION OF THE COURT'S ORAL RULING GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF ANTICIPATION**

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. ROKU'S EXCEPTIONALLY HIGH BURDEN OF PROOF ON A MOTION FOR SUMMARY JUDGMENT OF INVALIDITY ................................................................... 1

III. THE RECORD EVIDENCE DOES NOT SUPPORT A FINDING THAT THE '064 AND '066 PATENTS ARE NOT ENTITLED TO EARLIER PRIORITY DATES. ................................................................................................................................ 3

IV. THE RECORD EVIDENCE DOES NOT SUPPORT A FINDING THAT THE '114 PATENT IS NOT ENTITLED TO AN EARLIER PRIORITY DATE. ..................... 6

V. CONCLUSION .................................................................................................................. 8

# **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................. 2, 3

*Hybritech, Inc. v. Monoclonal Antibodies*, Inc.,
    802 F.2d 1367 (Fed. Cir. 1986) ..................................................................................... 2

*Moeller v. Ionetics, Inc.*,
    794 F.2d 653 (Fed. Cir. 1986) ....................................................................................... 3

*Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*,
    139 F.3d 877 (Fed. Cir. 1998) ....................................................................................... 2

*Novartis Pharms. Corp. v. Accord Healthcare, Inc.*,
    21 F.4th 1362 (Fed. Cir. 2022) ...................................................................................... 2

*Schumer v. Lab. Computer Sys., Inc.*,
    308 F.3d 1304 (Fed. Cir. 2002) ..................................................................................... 2

*Tillotson, Ltd. v. Walbro Corp.*,
    831 F.2d 1033 (Fed. Cir. 1987) ................................................................................. 2, 3

*United States v. Diebold, Inc.*,
    369 U.S. 654 (1962) ...................................................................................................... 3

I.     **INTRODUCTION**

Plaintiff Flexiworld Technologies, Inc. ("Flexiworld") respectfully seeks reconsideration of the Court's oral ruling during the April 1, 2022 pretrial conference in this case, in which the Court granted-in-part Defendant Roku, Inc.'s ("Roku") motion for summary judgment of anticipation (ECF 86 ("Motion")) finding that the patents-in-suit lack adequate written description. By seeking to invalidate all three patents-in-suit in its Motion—***despite the presumption of validity, the clear and convincing evidence burden of proof, and the law requiring that evidence be viewed in the light most favorable to Flexiworld***—Roku bore an exceptionally high burden of proof.

The Court apparently recognized that high burden by not granting Roku's Motion as to anticipation. However, the effect of the Court's ruling is still a finding of invalidity. Because the patents-in-suit are continuations of their parent applications (with disclosures identical to those parent applications), the Court's finding that the disputed claim elements lack adequate written description in the parent applications is effectively a finding of invalidity under 35 U.S.C. § 112, even though Roku did not expressly raise invalidity for lack of written description in its Motion.

Moreover, the same burden of proof (clear and convincing evidence) applies to the priority date question. In ruling that Roku had met that burden despite the evidence to the contrary (including detailed expert opinions and a contrary finding by the Patent Trial and Appeal Board), the Court committed manifest errors of law and fact that warrant reconsideration of the Court's ruling and denial of Roku's Motion.

II.    **ROKU'S EXCEPTIONALLY HIGH BURDEN OF PROOF ON A MOTION FOR SUMMARY JUDGMENT OF INVALIDITY**

Courts have repeatedly made clear that the burden of proving entitlement to summary judgment of invalidity is extremely high. *See, e.g.*, *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d

1

1304, 1315 (Fed. Cir. 2002) (referring to the "high burden of showing invalidity on summary judgment"); *Tillotson, Ltd. v. Walbro Corp.*, 831 F.2d 1033, 1036 (Fed. Cir. 1987) ("[I]n a summary judgment motion to invalidate an existing patent, the burden on the moving party is indeed heavy.").

That high burden is no accident, considering the legal standards that apply in considering such a motion, including the following:

Presumption of validity: It is black letter law that an issued patent is presumed to be valid. 35 U.S.C. § 282.  Because of that presumption, a party seeking to invalidate a patent bears the burden of proving invalidity by clear and convincing evidence.  *See, e.g.*, *Hybritech, Inc. v. Monoclonal Antibodies*, Inc., 802 F.2d 1367, 1375 (Fed. Cir. 1986).  That burden of proof applies not only at trial, but also at the summary judgment phase.  *Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 880-81 (Fed. Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986)) ("[I]n rendering a decision on a motion for summary judgment, a court must 'view the evidence presented through the prism of the substantive evidentiary burden' that would inhere at trial."); *Tillotson*, 831 F.2d at 1036 (noting that defendant can only overcome presumption of invalidity "by proving facts supported by clear and convincing evidence").

The questions of fact at issue: Both of the questions raised by Roku's Motion (*i.e.*, whether the asserted claims of the patents-in-suit are supported by the written description of their parent applications and whether the asserted claims are anticipated) are questions of fact.  *Novartis Pharms. Corp. v. Accord Healthcare, Inc.*, 21 F.4th 1362, 1368 (Fed. Cir. 2022) ("Whether a claim satisfies the written description requirement is a question of fact."); *Schumer*, 308 F.3d at 1315 ("Whether a patent is anticipated under section 102(b) is a question of fact.").

The requirement to view facts and inferences in Flexiworld's favor: Because Flexiworld is the non-movant, the Court must view the facts at issue in the light most favorable to Flexiworld

2

and draw all reasonable inferences in Flexiworld's favor. *See Tillotson*, 831 F.2d at 1037 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Moeller v. Ionetics, Inc.*, 794 F.2d 653, 656 (Fed. Cir. 1986)); *see also Anderson*, 477 U.S. at 255 ("***The evidence of the nonmovant is to be believed***, and all justifiable inferences are to be drawn in his favor.") (emphasis added).

### III. THE RECORD EVIDENCE DOES NOT SUPPORT A FINDING THAT THE '064 AND '066 PATENTS ARE NOT ENTITLED TO EARLIER PRIORITY DATES.

With respect to asserted U.S. Patent Nos. 8,989,064 (the "'064 patent") and 10,740,066 (the "'066 patent"), Roku only argues that a single limitation in the asserted claims is not supported by their parent applications (of which the '064 and '066 patents are continuations and share the same specification). Specifically, Roku disputes that "broadcasting . . . the availability of the output controller" (as opposed to the availability of an "output device") is supported by the parent applications. In disputing this issue on summary judgment and demonstrating support for that limitation, Flexiworld offered the following evidence:

- An ***express finding by the PTAB*** that the disputed limitation is supported by a provisional application to which the '066 patent claims priority;

- Roku's own motion to dismiss papers in this case, where ***Roku itself indisputably demonstrates how the disputed limitation is supported*** by the issued version of the parent application of the '066 patent's parent application;

- Dr. Almeroth's reasoned expert opinions explaining why the disputed claim element is supported by the parent applications, which Roku did not challenge as unreliable via *Daubert* or otherwise; and

- Flexiworld's contention interrogatory responses that detail what portions of the parent applications Flexiworld contends support every claim element.

Roku's only answer for Dr. Almeroth's opinions on the disputed claim element are to

3

wrongly label them as conclusory.  Nothing could be further from true.  Dr. Almeroth explains that the parent applications (and the specifications, which are identical to the parent applications) disclose that the claimed "output controller" can either be a standalone device connected to an output device (*e.g.*, by a wired connection), or it can be installed within an output device.  *See* ECF 87-2, ¶¶ 86, 87, 114.  As Dr. Almeroth explains though, ***in either configuration, it is the output controller functionality that performs the claimed "broadcasting."***  Indeed, the patents repeatedly indicate (and Roku does not dispute) that output devices perform the claimed "broadcasting" through the inventive output controller functionality described by and claimed in the '064 and '066 patents.  The '064 and '066 patents show that both the output controller and the output device can include a wireless communication unit for wireless communication (*see, e.g.*, '064 patent, 18:11-32, Fig. 5; '066 patent, 16:1-5), that both devices are "service devices" ('064 patent, 30:64-31:12; '066 patent, 21:9-13) and that "<u>all service devices can periodically or continuously announce or advertise the services they provide</u>" ('066 patent, 21:13-15 (emphasis added)).  *See also* ECF 87-2, ¶¶ 86, 87, 114 (discussing these and other disclosures).  Dr. Almeroth's analysis introduces more than sufficient facts (and inferences therefrom, both of which the Court must construe in Flexiworld's favor) to create a genuine issue of material fact that precludes summary judgment, particularly under the clear and convincing evidence standard.

Even aside from Dr. Almeroth's analysis, there is additional evidence that supports denial of summary judgment.  The PTAB has already concluded that this disputed limitation is supported by a provisional application to which the '066 patent and its parent application claim priority.  *See* ECF 138-8 at 21-22.  Roku has no legitimate answer to the PTAB's finding, other than to label it as "preliminar[y]."  ECF 159 at 10.  Nor does Roku have a legitimate answer for its contrary position in its motion to dismiss for lack of standing, where Roku itself demonstrates that the disputed claim element is supported by the '066 patent and its parent applications.  While Roku

alleges that motion "was premised on Flexiworld's position" about priority date (*id.* at 9), Roku's motion to dismiss papers repeatedly makes clear that is not the case. *See* ECF 56 at 3 ("As described below and shown in the attached claim charts, ***the issued claims of the '064 and '066 patents cover alleged inventions explicitly described in the '541 patent***."); *see also* ECF 57-5 (Roku chart showing support for every element of claim 1 of the '066 patent, including the element disputed in its Motion), ECF 57-6 (same for claim 1 of the '064 patent, including the element disputed in its Motion). That '541 patent is the issued version of the parent application for the '066 patent, and ***Roku's own charts cite to some of the very same disclosures that Dr. Almeroth relies upon*** to explain why the disputed claim element for the '064 and '066 patents is supported by the patent specifications and their parent applications:

### Roku's Chart

| [1-c] (1) wirelessly announce or advertise, using the one or more wireless communication units of the wireless output controller, availability of the wireless output controller to enable an information apparatus, from among the one or more information apparatus, to wirelessly discover the output service provided by the wireless output controller, the wireless discovery is based, at least in part, on the information apparatus being within a limited physical distance to the wireless output controller for establishing short range wireless communication between the information apparatus and the wireless output controller; | *See, e.g.*, 20:31-47 ("Discovery process 502 may operate in a variety of scenarios. In one scenario, information apparatus 100 broadcasts a service request, for example printing, through wired or wireless signals. Service devices, such as output device 140 equipped with output controller 120, "listen to" such signals, "read" the request, "see" whether they can provide requested service, and respond if they can provide the requested service. Alternatively or in combination, all service devices can periodically or continuously announce or advertise the services they provide. Information apparatus 100 "listens to" such announcements and identifies the service it needs. In a third scenario, service devices of the same network (e.g., LAN) register their services with a control point. A control point is a computing system (e.g. a server, controller) that maintains records on all service devices within the same network. Information apparatus 100 may contact the control point to search for the service it needs.") |

### Dr. Almeroth's Report

The '066 patent then describes that the functionality in the output controller (either as a standalone device or integrated into an output device) is used to broadcast availability of the output controller functionality for service to user devices. *See, e.g.*, '066 patent, 21:6-23 ("all service devices can periodically or continuously announce or advertise the services they provide"); *see also* '223 application, [0051], [00111], claim 9; '101 provisional application, 13:1-5, 28:2-11.

ECF 57-5 at 3 (Roku's chart); ECF 87-2, ¶ 114 (Almeroth report); *see also* ECF 57-6 at 4 (Roku

5

chart arguing that portions of the '541 patent support the element disputed here), ECF 87-2, ¶¶ 86-87 (citing to and discussing '064 patent 18:26-32, 24:13-45, 30:28-30, and 31:2-6, which are the equivalent disclosures to those cited in Roku's chart).

The '066 patent explicitly states that "all service devices can periodically or continuously announce or advertise the services they provide." *Id.* Asserted claim 14 makes clear that the claimed "output controller" is a service device—noting that "the wireless output controller provides the output service to the client device"—a point that Roku has never disputed. '066 patent, 35:47-48; *see also id.*, 10:29-38 ("Output controller 120 may actively search for available clients . . . to which clients[] output service could be provided"), '223 application, [0051] (same). To the contrary, Roku relied on this exact passage in support of its motion to dismiss (ECF 56), in which it argued that all the limitations of the '066 patent, including the "broadcasting" limitation, were fully supported by the parent application. As shown above, in making that argument Roku explicitly identified the claimed "wireless output controller" as a "service device." ECF 57-5 at 3 (Roku's chart).

Thus, when the evidence before the Court (and the relevant legal standards regarding Roku's burden of proof and the requirement that the Court accept facts and draw all reasonable inferences in Flexiworld's favor) is considered, Roku clearly has not met its burden of proof. In concluding otherwise, the Court committed manifest errors of law and fact that warrant reconsideration of its decision and denial of summary judgment as to the '064 and '066 patents.

**IV. THE RECORD EVIDENCE DOES NOT SUPPORT A FINDING THAT THE '114 PATENT IS NOT ENTITLED TO AN EARLIER PRIORITY DATE.**

With respect to asserted U.S. Patent No. 10,346,114 (the "'114 patent"), Roku again only argues that a single limitation in the asserted claims is not supported by the parent application (of which the '114 patent is a continuation). Specifically, Roku disputes that a "device object" is

6

supported by the parent application, even though there is no dispute that the '114 patent and its parent application clearly describe an "object" and an "output device object."  In disputing this issue on summary judgment, Flexiworld offered Dr. Almeroth's reasoned opinions about the disclosures of the '114 patent and its parent application.

As Dr. Almeroth discussed, the '114 patent and its parent application describe in detail what an "object" is in the context of the claimed inventions.  *See* ECF 87-2, ¶ 104 (discussing '114 patent, 5:24-28 and corresponding disclosure in the '413 application).  Dr. Almeroth also discussed (and Roku does not dispute) that the '114 patent and its parent application describe several particular types of objects, including "output device objects."  *See id.* (citing '114 patent, 6:8-8:19 and '413 application, [0036]-[0044]).

Importantly, Dr. Almeroth notes that the '114 patent and its parent application describe that an "output device object" can include various types of information about the device, such as identification information ("e.g., brand, model, registration, IP address etc.") and information about "[s]ervices and feature sets."  *See id.*, ¶ 105 (citing '114 patent, 6:24-7:5 and corresponding disclosures in '413 application).  These aspects are important because (1) they are not unique to output devices, and (2) **they are expressly recited in the claims** as types of information that can be included in a "device object."  Thus, as Dr. Almeroth explains, the '114 patent and '413 application's description of an "output device object" (when considered along with the description of an "object" generally and other types of objects) adequately describes the claimed "device object" to a person of ordinary skill in the art.

Roku's response to Dr. Almeroth's opinions is to allege that his opinions at best render obvious a "device object."  *See* ECF 159 at 5-7.  However, that is not at all what Flexiworld argued or what Dr. Almeroth opined.  Instead, Dr. Almeroth explained that these disclosures adequately describe to a person of ordinary skill in the art what a "device object" is and how it is

7

used in the context of the claimed inventions. At a minimum, these disclosures and Dr. Almeroth's discussion of them create a reasonable inference that the '114 patent and its parent application adequately describe the claimed "device object" to a person of ordinary skill in the art, particularly a device object that contains one or more of the claimed types of information that the specification and parent application expressly discuss in the context of an "output device object." Those types of facts and inferences are precisely the types that the Court must view in a light most favorable to Flexiworld in considering Roku's Motion but which the Court failed to acknowledge.

Thus, for the '114 patent as well, when the evidence before the Court (and the relevant legal standards) is considered, Roku clearly has not met its burden of proof of proving invalidity by clear and convincing evidence. In concluding otherwise, the Court committed manifest errors of law and fact that warrant reconsideration of its decision and denial of summary judgment entirely as to the '114 patent.

## V.     CONCLUSION

For the reasons discussed herein, the Court should grant Flexiworld's motion for reconsideration and deny Roku's Motion.

Dated: April 15, 2022            Respectfully submitted,

*/s/ Timothy E. Grochocinski*
**TIMOTHY E. GROCHOCINSKI**
ILLINOIS BAR NO. 6295055
**CHARLES AUSTIN GINNINGS**
NEW YORK BAR NO. 4986691
**NELSON BUMGARDNER CONROY PC**
15020 S. Ravinia Avenue, Suite 29
Orland Park, Illinois 60462
708.675.1974 (telephone)
tim@nelbum.com
austin@nelbum.com

**PATRICK J. CONROY**
STATE BAR NO. 24012448
**RYAN P. GRIFFIN**
STATE BAR NO. 24053687
**NELSON BUMGARDNER CONROY PC**
2727 N. Harwood, Suite 250
Dallas, Texas 76107
214.446.4950 (telephone)
pat@nelbum.com
ryan@nelbum.com

COUNSEL FOR PLAINTIFF
FLEXIWORLD TECHNOLOGIES, INC.

## **CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7, I hereby certify that on April 13, 2022, I conferred by email with counsel for Defendants about the substance of this motion, and Defendants confirmed that they oppose this motion.

           */s/ Timothy E. Grochocinski*

## **CERTIFICATE OF SERVICE**

Pursuant to Local Rule 5(b)(1), I hereby certify that the foregoing document was electronically filed on April 15, 2022, with the Clerk of Court using the CM/ECF filing system, which will generate and send an e-mail notification of said filing to all counsel of record.

           */s/ Timothy E. Grochocinski*