IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **FLEXIWORLD TECHNOLOGIES, INC.,**<br>*Plaintiff*<br><br>-vs-<br><br>**ROKU INC.,**<br>*Defendant* | §<br>§<br>§<br>§<br>§   W-20-CV-00819-ADA<br>§<br>§<br>§<br>§<br>§ |

## ORDER DENYING ROKU, INC.'S MOTION FOR PARTIAL DISMISSAL DUE TO LACK OF STANDING ('064 AND '066 PATENTS)

Came on for consideration Defendant Roku, Inc.'s ("Roku" or "Defendant") Motion for Partial Dismissal Due to Lack of Standing ('064 and '066 Patents) (the "Motion"). ECF No. 56. Plaintiff Flexiworld Technologies, Inc. ("Flexiworld" or "Plaintiff") filed a response (ECF No. 66), and Roku a reply (ECF No. 67). This Court held a hearing on the Motion on Friday, March 4, 2022 and denied Roku's Motion. This order is a supplement to the Court's ruling on the record at that hearing.

### I.   BACKGROUND

On September 8, 2020, Flexiworld filed this lawsuit accusing Roku of infringing U.S. Patent Nos. 8,989,064 (the "'064 Patent"), 10,346,114 (the "'114 Patent"), and 10,740,066 (the "'066 Patent") (collectively, the "Patents-in-Suit"). Two of the three patents, the '064 Patent and '066 Patent, are relevant to this Motion. The '064 Patent is entitled "Wireless controller wire connectable to output devices such as televisions for accessing digital content and for wireless communication with mobile information apparatus." ECF No. 1 ¶ 19. The '066 Patent is entitled "Output devices that establish wireless connection with an information apparatus subsequent to having been wirelessly discovered by the information apparatus." *Id.* ¶ 29. Flexiworld alleges

1

that "Roku has infringed and continues to infringe (literally and/or under the doctrine of equivalents), directly, indirectly, and/or through subsidiaries, agents, representatives, or intermediaries, one or more claims of each of the Patents-in-Suit by making, using, importing, testing, supplying, causing to be supplied, selling, and/or offering for sale in the United States its Roku devices." *Id.* ¶ 40.

In November of 2012, Flexiworld assigned U.S. Patent No. 7,941,541 (the "'541 Patent"), U.S. Patent Application No. 13/103,958 (the "'958 Application"), a continuation application, and a second continuation application, along with other various rights, to Samsung Electronics Co., Ltd. ("Samsung"). ECF No. 56-3 at 1. The extent of those rights are the center of this dispute. In short, Roku argues that the Patents-at-Issue are related to the '541 Patent and '958 Application, and per the language of the Patent Purchase and License Agreement (the "Agreement") (ECF No. 56-3), were also assigned to Samsung. Accordingly, Samsung is a necessary party. And so, because Samsung is not joined in this action, Roku argues Flexiworld is deprived of standing to assert the Patents-at-Issue. Flexiworld disputes Roku's construction of the Agreement and argues that Roku's interpretation of the Agreement would eliminate an additional 50 or so Flexiworld patents. The Agreement is subject to principles of contract interpretation governed by Washington state law.

Roku's argument is similar to motions to dismiss filed by Amazon.com, Inc., Amazon.com Services, Inc., and Amazon Web Services, Inc. (collectively, "Amazon") in the *Flexiworld Techs., Inc. v. Amazon.com, Inc.* case previously before this Court. Upon transfer, the case was stayed pending resolution of a motion to dismiss and remains pending in the Western District of Washington.

## II.     LEGAL STANDARD

### A. Applicable Law on Contract Interpretation

Courts are to "apply state law to contractual disputes and interpretations of the parties' patent assignment agreements." *Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1320 (Fed. Cir. 2017). Pursuant to the Agreement, "the validity, interpretation and performance of this Agreement, and any disputes arising thereunder, shall be governed and construed in accordance with the laws of the State of Washington, without regard to the conflict of law principles thereof." ECF No. 56-3 at 18, § 11.8.

Washington follows the "objective manifestation theory of contracts." *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503 (2005). Under the objective manifestation theory, courts "attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." *Id.* Courts should "impute an intention corresponding to the reasonable meaning of the words used." *Id.* "Thus, when interpreting contracts, the subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used." *Id.* Importantly, Washington contract law instructs that courts "do not interpret what was intended to be written but what was written." *Id.* at 504.

To interpret a contract, Washington state law requires that the "entire contract must be construed together in order to give force and effect to each clause." *Wash. Public Utility Districts' Utilities System v. Public Utility Dist. No. 1*, 112 Wn.2d 1, 10 (1989) (en banc). Washington follows the doctrine of *ejusdem generis*, which provides that "when a general term follows or is preceded by a series of specific terms, the general term should not be given its broadest possible meaning, but rather should extend only to matters of the same general class or

nature as the terms specifically enumerated." *State v. R.J. Reynolds Tobacco Co.*, 151 Wn. App. 775, 784, n.23 (2009). "The doctrine applies in both statutory and contract interpretation cases." *Id.*

Washington state law also applies the context rule. *Nye v. Univ. of Wash.*, 163 Wn. App. 875, 883 (2011). "Under the context rule, [a court] may consider extrinsic evidence to determine the specific words and terms used, but not to show an intention independent of the instrument." *Id.* "Extrinsic evidence includes the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties, and the reasonableness of the respective interpretations urged by the parties." *Id.* (citing *Hearst*, 154 Wn.2d at 502).

Extrinsic evidence can be used to determine the meaning of specific words and terms, but extrinsic evidence cannot be used to "show an intention independent of the instrument" or to "vary, contradict or modify the written word." *Id.* at 503 (quoting *Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 693 (1999)). Parties may not rely on parol evidence to add to the terms of a fully integrated contract. *RSD AAP, LLC v. Aleyska Ocean, Inc.*¸190 Wn. App. 305, 315 (2015).

### B. Standing

To have standing, "the plaintiff must have suffered an injury in fact (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely, that the injury will be redressed by a favorable decision." *MHL TEK, LLC v. Nissan Motor Co.*, 655 F.3d 1266, 1273–74 (Fed. Cir. 2011) (internal quotations and ellipses omitted) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). In an action for patent infringement, "the party holding the exclusionary rights to the patent suffers legal injury in fact under the statute." *Id.* (quoting *Morrow v. Microsoft Corp.*¸499 F.3d 1332, 1339 (Fed. Cir. 2007)).

4

Once standing is called into question, the party asserting standing "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988); *Sicom Systems, Ltd. v. Agilent Technologies, Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005). The determination of whether the plaintiff has carried that burden is an issue of law for the court. *MHL Tek*, 655 F.3d at 1273. If the court determines that the plaintiff lacked standing at the time it filed suit, the court lacks subject-matter jurisdiction and must dismiss the case or cause of action under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995).

## III. DISCUSSION

### A. The Relevant Contract Provisions

For ease of reference, the Court provides the provisions of the Agreement that are relevant to the parties' arguments and this Court's analysis.[1]

> **§ 1.1 Patents.** In this Agreement, "Patents" shall collectively mean "Assigned Patent Rights" (defined below) and "Licensed Patents" (defined below) and rights related thereto or arising thereunder.
>
> **§ 1.1.1 Assigned Patent Rights.** In this Agreement, "Assigned Patent Rights" shall collectively mean one U.S. Patent ("the Assigned Patent"), namely, U.S. Patent No. 7,941,541, and one pending U.S. Patent application ("the Assigned Application"), namely, U.S. Patent Application Serial No. 13/103,958, and one Continuation Application as defined in section 1.1.1 (b) below, and one Divisional Application as defined in section 1.1.1 (c) below, and one Second Continuation application as defined in section 1.1.1 (*d) below; and rights related thereto or arising thereunder, including any and all (a) inventions, invention disclosures, and discoveries described in any of the foregoing that are included in a claim in any of the foregoing or in any patents resulting from a reissue or

---

[1] The Agreement and Assignment Document (defined below) can be found at ECF No. 56-3. The Court shall refer to the below sections as follows: § 1.1 shall be defined as "§ 1.1"; § 1.1.1 shall be defined as "§ 1.1.1" or "Assigned Patent Rights"; § 2.1 shall be defined as "§ 2.1" or the "Assignment Provision"; § 11.5 shall be defined as "§ 11.5" or the "Control Provision"; and § 11.6 shall be defined as "§ 11.6" or the "Incorporation Provision." Exhibit A of the Agreement shall be known as the "Assignment Document" or "Exhibit A."

reexamination proceeding brought on any of the foregoing; (b) rights related to and arising under one continuation application based on the Assigned Application (the "Continuation Application"), including the rights to file and prosecute the Continuation Application, as well as all rights related to and arising under any and all patents that issue or result from the Continuation Application, including any and all reissues, reexamination, extensions, requests for continuing examinations, substitutions, renewals, and registrations thereof; . . .

**§ 2.1 Assignment (the "Assignment Provision").** Upon Closing (defined below) Assignor hereby sells, assigns, conveys, transfers, and delivers to Assignee all of Assignor's right, title, and interest, throughout the world, as of the Effective Date or after-acquired, in and to the assigned Patent Rights. Immediately upon its receipt of the wire transmittal confirmation for the Payment (defined below), Assignor shall deliver to Assignee an executed assignment document having the form and substance of **Exhibit A** ("Assignment Document") to allow Assignee's recordation of its ownership interest in the Assigned Patent Rights.

**§ 11.5 (the "Control Provision").** This Agreement (including the exhibits attached hereto or delivered in connection herewith) constitute the entire agreement between the parties and supersede all prior agreements and understandings, oral and/or written, between the Parties with respect to the subject matter hereof and thereof. The terms and conditions of this Agreement shall be controlling over the terms and conditions of the assignment documents delivered pursuant to Sections 2 and/or 6 in the event of any perceived or actual conflict therebetween.

**§ 11.6 (the "Incorporation Provision").** The Parties hereto acknowledge and agree that the exhibits attached hereto are an integral part of this Agreement, and are hereby incorporated by reference herein and made a part hereof.

**Exhibit A ("Exhibit A," or the "Assignment Document").** For valuable consideration, the receipt and adequacy of which is hereby acknowledged, Assignor hereby sells, assigns, and transfers unto Samsung Electronics Co., Ltd., a corporation incorporated under the laws of the Republic of Korea (the "Assignee"), the sole and entire right, title, and interest that exist today and may exist in the future in and to U.S. Patent No. 7,941,541 and U.S. patent application Serial No. 13/103,958, including all rights pursuant to 35 U.S.C. § 154 and any and all Letters Patent issuing therefrom, and any and all reissues, reexaminations, extensions, substitutions, renewals, and registrations of any item in the foregoing; all inventions described in any of the foregoing, (the "Patents"); and all past, present, and future causes of action and claims for any injunctive relief and/or damages derived by reason of patent infringement thereof, for said Assignee's own use and for the use of its assigns, successors, and legal representatives to the full end of the term of each of the Patents.

B. Roku's Argument

Roku's argument to dispute Flexiworld's ownership of the Patents-in-Suit is two-fold. First, Roku argues that the contractual language, specifically the "rights related thereto or arising thereunder" captures the Patents-in-Suit because the "'066 Patent incorporates by reference the complete specification of the '541 Patent" and the "subject matter recited in the independent claims of the '064 patent, an 'output controller,' is extensively described in the '541 patent." ECF No. 56 at 2–3. Second, Roku contends that Exhibit A, or the Assignment Document, broadens the rights assigned to Samsung to include the Patents-in-Suit because it assigns "all inventions described in any of the foregoing," specifically referring to the '541 Patent and '958 Application. *Id.* at 2. Moreover, Exhibit A is incorporated into the Agreement by virtue of § 11.6.

Roku posits Flexiworld assigned "all inventions described in" the '541 Patent" (ECF No. 56-3 § 1.1.1) "without any carveout provisions limiting the subject matter of the assigned inventions or permitting Flexiworld to retain any rights related to the described inventions." ECF No. 56 at 6. One right that stems from ownership of a patent application "is the right to draft a claim covering any invention disclosed in the application." *Id.* Thus, "[b]ecause Samsung was assigned the '958 application and the 'rights related thereto or arising thereunder,' Samsung owned the sole right to decide what subject matter disclosed in the specification of the '958 application to protect with patent claims and what subject matter to dedicate to the public." *Id.* at 7. Roku, therefore, argues that it was not Flexiworld's decision. *Id.*

Roku's second part of the argument is heavily dependent on the language found in Exhibit A of the Agreement, known as the Assignment Document. Roku argues that Exhibit A, the Assignment Document, confirms that "Samsung was assigned the right to decide which inventions in the '958 application to claim and which to dedicate to the public." *Id.* Per Roku,

7

this is because Exhibit A was explicitly incorporated into the Agreement. *See* ECF No. 56-3 § 11.6 ("The Parties hereto acknowledge and agree that the exhibits attached hereto are an integral part of this Agreement, and are hereby incorporated by reference herein and made a part hereof."). And, despite Flexiworld's contentions, incorporation of Exhibit A does not render the Agreement "nonsensical or meaningless" because, "when properly read as a whole, the Assignment Agreement and Exhibit A are consistent." ECF No. 56 at 7. Roku also disputes any conflict between the language of Exhibit A and § 1.1.1 of the Agreement. Instead, Roku states that § 1.1.1 presents broad language and Exhibit A includes more specific language.

### C. Flexiworld's Argument

Flexiworld argues that four things were assigned to Samsung, and nothing else. Those include the '541 Patent, the '958 Application, a continuation application, and a second continuation application. Additionally, any conflicts between the language of Exhibit A and § 1.1.1 of the Agreement are controlled by the language in § 1.1.1. The conflict in the language appears due to the restrictive language in § 1.1.1 that limits the broad language referenced by Roku to only "a claim in any of the foregoing [patents]." Thus, the "rights related to or arising thereunder" is limited only to those "inventions . . . included in a claim." Flexiworld also relies on the doctrine of *ejusdem generis* wherein a general term followed or preceded by a series of specific terms only extends to the matters of the same class of those specifically enumerated terms and not its broadest possible meaning. Flexiworld further argues that the language in Exhibit A does not redefine the Assigned Patent Rights as dictated in § 1.1.1. This is further supported by § 11.5 which states that the "terms and conditions of this Agreement shall be controlling over the terms and conditions of the assignment documents delivered pursuant to Sections 2 and/or 6 in the event of any perceived or actual conflict therebetween." Last,

Flexiworld states that Washington applies the context rule which allows a court to consider extrinsic evidence to determine the specific words and terms used. And, in Flexiworld's view, all extrinsic evidence supports Flexiworld's position, including: the letter of intent, additional published applications at the time of the agreement, Samsung's assignment recordation, Samsung's post-agreement prosecution, the lack of any Samsung involvement or objection to Flexiworld's 10 years of post-agreement prosecution activity, and Samsung's silence despite receiving notice of this standing issue three times. Importantly, Roku cannot point to any extrinsic evidence to support its position.

### D. Analysis

#### i. *The '064 and '066 patents are not assigned to Samsung.*

Roku contends that the contractual language in § 1.1.1 of the Samsung Agreement is unlimiting and should be interpreted to include the '064 and '066 patents. ECF No. 56 at 6–7. However, Roku interprets the "rights related thereto or arising under" language out of context. *See* ECF No. 56-3 at 1. The Court agrees with Flexiworld's interpretation that the language in § 1.1.1 specifically assigns four items (the '541 Patent, the '958 Application, a continuation application, and a second continuation application), and that the additional "rights related thereto or arising thereunder" language is modified by and limited to only those inventions "that are included in a claim." *See id.*; ECF No. 66 at 2.

Roku contends that there is no need to look at extrinsic evidence because the parties' intent can be determined from the contractual language itself. See ECF No. 67 at 4–6. However, Washington state law applies the context rule, in which "[a court] may consider extrinsic evidence to determine the specific words and terms used, but not to show an intention independent of the instrument." *Nye.*, 163 Wn. App. at 883. The Court finds the extrinsic

9

evidence to be relevant in determining the meaning of "rights related thereto or arising thereunder" in § 1.1.1 and whether this language meant to assign to Samsung any rights in the Patents-at-Issue. The extrinsic evidence further supports Flexiworld's position. For example, prior to executing the Samsung Agreement, Flexiworld and Samsung executed a Letter of Intent ("LOI"). ECF No. 66 at 10. In the LOI, the "Property to be sold" was defined as "[t]he intellectual property in Exhibit A attached hereto. . . ." and Exhibit A to the LOI identified only two items: the '541 patent and the pending '958 application. *Id.* at 11. Nothing in the LOI suggested that the parties intended § 1.1.1 to be broad enough to assign any of the Patents-at-Issue. *Id.* Also, Samsung's inaction after receiving ample notice of the ongoing prosecution proceedings is indicative of Samsung abiding to the agreed upon terms, which assigned four specific items and nothing more. *Id.* at 12. The Court finds these pieces of extrinsic evidence persuasive in determining that the contractual language does not assign the Patents-at-Issue to Samsung.

Following the Court's conclusion regarding the assignment language, the next issue is whether the specific list in § 1.1.1 governs over any generic statements regarding "rights." Flexiworld's interpretation is supported by *Intellectual Ventures v. Erie*, which included an assignment clause that listed several patents and assigned the rights "in and to said patents." 850 F.3d at 1321. The Federal Circuit rejected the argument that "in and to said patents" included all future related applications and held that the specific list of patents being assigned governed over the general clause regarding "rights." *Id.* at 1323. The Court holds likewise, rejecting the argument that "rights related thereto or arising thereunder" includes the '066 and '064 patents and that the specific list of patents assigned in § 1.1.1 governs.

Roku relies upon *MHL Tek*, another Federal Circuit case holding that an assignment agreement "encompassed more than just patents and applications related to the Parent application." *MHL Tek, LLC*, 655 F.3d at 1276; ECF No. 56 at 7. However, unlike the Samsung Agreement, the assignment provision in *MHL Tek* contained no specific list of patents and used broad language assigning "the entire right…in and to the inventions and discoveries in [the Parent Application]". *Id.* at 1271. Therefore, the Court does not find *MHL Tek* controlling in this case.

Flexiworld's interpretation is further supported by the doctrine of ejusdem generis, which provides that "when a general term follows or is preceded by a series of specific terms, the general term should not be given its broadest meaning, but rather should extend only to matters of the same general class or nature as the terms specifically enumerated." *R.J. Reynolds Tobacco*, 151 Wn. App. at 784, n.23. The Federal Circuit has applied this doctrine in the assignment context, finding that specific language controls over general language. *See Dow Chem. Co. v. Nova Chemicals Corp. (Canada)*, 458 Fed. Appx. 910, 914 (Fed. Cir. 2012) (holding that a specific list of patent rights assigned to DGTI controlled over broad language regarding "rights.") Applying this doctrine here, the specific list of patents being assigned in § 1.1.1 governs over the later general clause regarding "rights."

Moreover, under Washington law, "[c]ourts may not adopt a contract interpretation that renders a term absurd or meaningless." *Spectrum Glass Co., Inc. v. Public Utility Dist. No. 1 of Snohomish County*, 129 Wn. App. 303, 312–13 (2005). Flexiworld is obligated under § 6.6 of the Samsung Agreement to assign additional patents to Samsung if any patents already assigned to Samsung are challenged as double-patented. *See* ECF No. 56-3 at 12. If Roku's interpretation of

§ 1.1.1 is correct, then Samsung would already own all related patents and § 6.6 would be rendered meaningless. The Court rejects such an interpretation based on *Spectrum Glass*.

Roku also contends that Exhibit A is "an integral part" of the Agreement based on § 11.6; and consequently, Exhibit A broadens the rights assigned to Samsung to include the Patents-in-Suit. ECF No. 56 at 7. Flexiworld counters that the unexecuted copy of Exhibit A has no legal effect and does not redefine the assigned patent rights. ECF No. 66 at 16. Once executed, Exhibit A is an assignment document delivered pursuant to § 2. *Id.* Thus, adopting Roku's interpretation ignores the second sentence of § 11.5, which explicitly indicates that its terms supersede any assignment documents delivered pursuant to § 2, including Exhibit A. *See* ECF No. 56-3 at 17. Again, the Court rejects such an interpretation based on *Spectrum Glass* and finds that the definition of Assigned Patent Rights in § 1.1.1 is controlling.

###### ii.   *Flexiworld has Standing.*

Prudential standing is a requirement in an action for patent infringement, and "the party holding the exclusionary rights to the patent suffers legal injury in fact under the statute." *MHL TEK, LLC*, 655 F.3d at 1273–74 (quoting *Morrow*, 499 F.3d at 1339). The question of whether Flexiworld has proper standing heavily depends on the Court's clarification of the contractual language.

Roku contends that, according to contract provisions § 1.1.1 and § 11.6, Samsung was assigned the rights and is either the owner or co-owner of the '064 and '066 patents. It follows, therefore, that because Flexiworld did not join Samsung, Flexiworld lacks standing to assert patents '064 and '066 on its own and cannot involuntarily join Samsung. *Id. See, e.g., Israel Bio-Eng'g Project v. Amgen Inc.*, 475 F.3d 1256, 1264–65 (Fed. Cir. 2007) ("Where one co-owner

possesses an undivided part of the entire patent, the joint owner must join all the other co-owners to establish standing.") (citation omitted).

However, because § 11.5 and § 1.1.1 supersede § 11.6, the Court finds that Samsung is neither an owner nor a co-owner of the '064 and '066 patents. Flexiworld is the sole owner of the Patents-at-Issue; thus, the Court concludes that Flexiworld has standing.

## IV. CONCLUSION

It is therefore **ORDERED** that Roku's Motion for Partial Dismissal Due to Lack of Standing Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(7) is **DENIED**.

SIGNED this 6th day of June, 2022.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE